CROLIUS and another, Appellants, vs. LORGE and wife, Respondents.

*January 11—February 8, 1927.*

*Contracts: Option to purchase land: Construction of ambiguities in contract: When option must be exercised: Waiver of provisions as to time: Practical construction of contract: Failure of owner to furnish good title: Recovery of consideration paid for option.*

1. Where a contract is inconsistent or ambiguous, the court must consider not only one or two distinct provisions of the agreement, but the whole thereof, in order to ascertain, if possible, the true intention of the parties. In construing such a contract the court may be largely governed by the acts of the parties themselves, in so far as they tend to show the intent of the parties. p. 136.

Crolius v. Lorge, 192 Wis. 130.

2. Under an option contract to purchase land which provided for written notice of the intention to purchase and that the purchaser should have ten days in which to examine the abstract, the vendors, by complying with a request over the telephone for an abstract and furnishing the abstract two days before the expiration of the time limit in the contract, waived their rights as to written notice and time limit.  p. 137.
3. The abstract furnished not showing a good and marketable title, and the vendors not offering to rectify the title within a reasonable time, the purchaser could recover the $2,500 paid for the option to purchase the property for $42,500.  pp. 137, 138.

APPEAL from a judgment of the circuit court for Ozaukee county: C. M. DAVISON, Circuit Judge. *Reversed.*

This is an appeal by the plaintiffs from a judgment dismissing the complaint with costs.

The defendants on May 20, 1925, claimed to be the owners of a farm consisting of 176 acres, in Ozaukee county, bordering on Lake Michigan. The plaintiffs, residents of Milwaukee, on the date named procured from the defendants, by the payment of the sum of $2,500, an option in writing for the purchase of said real estate for the sum of $42,500. Owing to the peculiar nature of the wording of the agreement and the ambiguities contained therein, the material portions thereof are set forth verbatim, as follows:

"In consideration of the sum of $2,500 paid to the undersigned *John Lorge* and *Anna Lorge,* his wife, by *S. Lacy Crolius, Irving R. Gillette,* of the county of Milwaukee, state of Wisconsin, the receipt whereof is hereby acknowledged, the option is hereby given by *John Lorge* and *Anna Lorge,* his wife, their heirs and assigns to the said *S. Lacy Crolius* and *Irving R. Gillette,* their heirs, successors and assigns residing at Milwaukee, Wisconsin, to purchase within ninety-five days (95) from date hereof the following described lands in the county of Ozaukee, to wit: [Here follows description.]

"In case the said *S. Lacy Crolius* and *Irving R. Gillette,* their heirs, successors and assigns elect to purchase said land under this option, they are to pay at the office of county judge, court house, Port Washington, Ozaukee county, Wis-

consin, the sum of $30,000, and to secure the balance of the purchase price of said land by a purchase-money mortgage in the amount of $10,000, payable on or before three (3) years from the date of its execution, and bearing interest at the rate of five and one-half per cent. (5½ %) per annum, payable semi-annually, said purchase-money mortgage to be given on the following described premises: [Here follows description]; and executed in favor of the undersigned *John Lorge* and *Anna Lorge*, his wife, when a warranty deed with all riparian rights of said land shall be executed and delivered conveying said land to *S. Lacy Crolius* and *Irving R. Gillette*, their heirs, successors and assigns, free and clear of all incumbrances, and furnish the said *S. Lacy Crolius* and *Irving R. Gillette* a complete abstract showing a merchantable title.

"In case of the purchase of said real estate under this option, as aforesaid, the $2,500 money now paid for this option is to be applied toward the purchase price of said real estate of $42,500, leaving balance to be paid of $30,000 in cash and the mortgage of $10,000. It is agreed that time is the essence of this option and that this option shall never be construed to give the said *S. Lacy Crolius* and *Irving R. Gillette*, their heirs, successors and assigns any equity of redemption or any right, title, interest or claim of any kind whatever in said real estate, in case they fail to make payment of the sum of $30,000 in cash and the purchase-money mortgage of $10,000 as provided, punctually within ninety-five (95) days from date hereof, as hereinbefore provided. It is further agreed that their failure to make such payment, last herein referred to, punctually, as herein above provided, shall be held to be a complete surrender by them of all rights and privileges conferred by this option.

"In case said parties of the second part shall elect to purchase said property pursuant to said option, they or any one of them shall signify and declare such election by notice hereof in writing served upon said parties of the first part by mail addressed to them at Port Washington route within the time above limited; and failure to serve such notice shall terminate this option without further notice, time being of the essence of this contract.

"In case said parties of the second part shall so elect to purchase said property and shall serve said notice of such

election within the time herein specified, said parties of the first part shall deliver to the said parties of the second part an abstract of title to said property, officially continued to the time of said delivery, within ten days after the service of such notice, and said parties of the second part shall have ten days after such delivery of said abstract to examine said title and to close and complete said purchase; and said parties of the first part agree to free said property from all taxes, assessments, liens and charges to the date of such purchase, to give good and marketable title to said property, and to convey the same agreeable to this contract by warranty deed.

"During the life of this option *S. Lacy Crolius* and *Irving R. Gillette,* their heirs, assigns and successors shall have the right of ingress and egress at any time to the premises hereinbefore described and the privileges of using all property not cultivated along lake shore, however not interfering with the pasturage privilege of the first parties, the undersigned reserving the right to occupy said hereinbefore described premises until October 15, 1925, and further reserves the right to farm work the said lands, plant and harvest for his own use and benefit all of the crops grown up to said 15th day of October, 1925.

"In witness whereof, the parties of the first part have hereunto set their hands and seals the 20th day of May, A. D. 1925."

One Bicheler acted as the agent of the defendants in the transaction, and on the 14th day of August, 1925, one of the plaintiffs called him up by long distance at his office at Port Washington, and informed him that the plaintiffs had concluded to consummate the deal, and requested that the abstract be sent them at once. The abstract was not delivered until the 21st day of August, and upon its receipt was immediately turned over to plaintiffs' attorney for examination and for an opinion. The ninety-five-day period expired on August 23d. On the last mentioned date *Mr. Gillette,* one of the plaintiffs, was upon the farm and there met the defendant *Lorge,* and the latter claimed that the ninety-five days had expired, to which *Mr. Gillette* replied, in substance, that the plaintiffs had ten days after receipt of the ab-

stract to examine the same.   Some conversation also ensued with respect to the amount of the mortgage, it being the plaintiffs' expressed desire to add $10,000 to the mortgage and thus reduce the amount of cash payment.  *Lorge* claimed that he was not ready to make this concession, but would be obliged to first discuss the matter with his wife.

On August 27th plaintiffs' counsel submitted an opinion as to the title, in which he directed attention to numerous material defects therein.   In brief, in accordance with the opinion, the abstract did not show that defendants had any record title to the property.   It also showed that, in the chain of title, conveyances were made without the grantor's wife joining therein.   Conveyances also by guardian, of the interests of minors in the property, did not disclose proper guardianship proceedings or authority of the court to sell.

On August 28th the opinion of counsel was mailed to the defendants with a letter claiming that the title was not good and marketable; that the plaintiffs were unable to accept this title, and requesting also the return of the $2,500 paid for the option.   To this letter defendants' counsel in due course of mail replied that the failure to exercise the terms of the option before it expired barred the plaintiffs from any right to a return of the $2,500.   No offer was made by the defendants to rectify the defects in title, and thereupon the present action was begun by the plaintiffs to recover from the defendants the amount paid for the option.

In its opinion the court held in substance that the plaintiffs did not elect to purchase within the ninety-five-day period, in accordance with the terms of the option; that the defects in the title were trivial and could have been readily rectified; and that no reasonable time was afforded to correct the title after ascertaining the defects.   Findings of fact and conclusions of law were thereupon made and filed by the court in accordance with the opinion, and judgment was then entered upon such findings dismissing plaintiffs' complaint with costs, from which judgment this appeal was prosecuted.

For the appellants there were briefs by *Walter F. Mayer* and *James E. Coleman,* both of Milwaukee, and oral argument by *Mr. Mayer.*

For the respondents there was a brief by *Schanen & Huiras* of Port Washington, and oral argument by *Peter M. Huiras.*

DOERFLER, J. There are two crucial questions presented in this case. The first involves the construction of the agreement, and the second involves the question of whether the provision of the agreement requiring a written notice by mail has been waived.

Ordinarily in an agreement of this kind the amount paid for an option consists of a nominal sum paid to bind the bargain and to make the option legally operative. The sum paid on this agreement was substantial, notwithstanding the total consideration for the land amounted to $42,500. The sum of $2,500 paid when the option was extended is some evidence that the plaintiffs did not merely enter the transaction for speculative purposes, but that they acted in good faith, with a view of purchasing.

We must confess that, in view of the conflicting and inconsistent provisions of the agreement, it is rather difficult to determine the real intentions of the parties. By the very first paragraph of the agreement the option is extended to the plaintiffs to purchase the property within ninety-five days from the date thereof. The option also contains a provision that time shall be of the essence of the agreement. It also provides that if the plaintiffs shall fail to make payment of $30,000 in cash and $10,000 by mortgage within ninety-five days, such failure shall be held to be a complete surrender by them of all rights and privileges conferred by the option. Had the agreement stopped at that point, no contention could be made that it contained any uncertainty or ambiguity. The agreement then continues by defining the method to be pursued by the plaintiffs if they elected within

the ninety-five-day period to consummate the deal. The notice of election was to be in writing, and served upon the defendants by mail. Upon service of the election to purchase within the time provided for by the agreement, the parties of the second part agreed to deliver to the parties of the first part, within ten days of such election, an abstract of title showing good and merchantable title, and thereupon there was extended to the plaintiffs an additional period of ten days within which to examine such title and to close and complete the purchase.

The defendants contend that under the terms of the option the notice of election should have been served no later than August 3d, which would have afforded the defendants ten days within which to furnish the abstract, and the plaintiffs an additional ten days to examine the title and to consummate the deal. The agreement, however, provides that the notice of election to purchase shall be served "within the time above limited," and the time as so limited is ninety-five days from the date of the option. Then the agreement in express language provides for the two ten-day periods for the benefit of both the defendants and of the plaintiffs. Under these circumstances it is incumbent upon the court to consider not only one or two distinct provisions of the agreement, but the whole thereof, in order to ascertain, if possible, the true intention of the parties. Furthermore, in case of an ambiguity or inconsistency we must not overlook the rule that in construing contracts courts may be largely governed by the acts of the parties themselves, in so far as they have a tendency to show the intent of the parties. When the plaintiffs by long distance, on the 14th day of August, notified defendants' agent, Bicheler, that they were going through with the deal at once, and demanded an abstract, no contention was made that the election of option to purchase was too late or that the method pursued was not in accordance with the agreement, and that it would there-

fore not be recognized; but, on the contrary, the abstract was procured, completed, and transmitted to the plaintiffs on the 21st day of August. In fact, the first intimation on defendants' part that all rights under the agreement would expire on the 23d day of August was not given to the plaintiffs until that date, and the evidence does not disclose that the defendants insisted thereon, but, on the contrary, *Mr. Lorge* suggested that before he could make any change as to the cash payment he would first be obliged to confer with his wife on the subject.

The ninety-five-day period, and the provision in the agreement for a written notice of election to purchase, were inserted in the agreement for the benefit of the defendants, and they could at any time, if they desired, waive both the provision as to time and the manner of giving notice. Assuming, therefore, that defendants' position is correct with respect to the time when the notice of election to purchase should be made, by complying with the request for an abstract after the notice on plaintiffs' part that they were ready to proceed with the deal forthwith, and by the delivering of the abstract for examination, the defendants effectually waived their rights upon these subjects. The plaintiffs did not have ten days after delivery of the abstract within which to examine the title and to consummate the deal, for but two days remained between the date of the delivery of the abstract and the expiration of the ninety-five days.

In the statement of facts we have not attempted to set forth all of the objections made by plaintiffs' counsel to the condition of the title. The abstract clearly did not show a good and marketable title; in fact, it was in such a condition that no prudent person could be expected to accept title as thus shown. See *Curtis Land & L. Co. v. Interior L. Co.* 137 Wis. 341, 118 N. W. 853; *Harrass v. Edwards,* 94 Wis. 459, 69 N. W. 69; *Geray v. Mahnomen L. Co.* 143 Minn. 383, 173 N. W. 871.

The plaintiffs, upon examination of the title, forwarded the opinion of counsel to the defendants, informing them at the same time that the title was not good, and also requesting that the amount paid for the option be returned. To this the defendants responded in substance that the plaintiffs had lost all claim to the $2,500 paid, because they did not exercise their option to purchase in accordance with the terms of the agreement. No offer was made to rectify the defective abstract within a reasonable time. In other words, the defendants clearly left the impression with the plaintiffs that the $2,500 was forfeited and that they would stand upon their rights under the agreement, in accordance with their expressed views.

Under these circumstances we conclude: First, that the agreement taken as a whole required the plaintiffs to elect to purchase within the ninety-five days. Second, that the plaintiffs did not elect to purchase in accordance with the method prescribed by the agreement, but that the defendants, by accepting the parol notice and delivering the abstract, waived their rights to a written notice by mail. Third, that the defendants, by their acts in delivering the abstract pursuant to the oral request, made manifest their views as to the meaning of the agreement; in other words, construed the agreement, and such construction is favorable to the position taken by the plaintiffs. Fourth, that the abstract furnished did not show good and marketable title; and that the defendants made no offer whatsoever to rectify the title within a reasonable time, but insisted that the agreement was breached by the plaintiffs because they did not elect to purchase in accordance with the terms of the agreement.

*By the Court.*—The judgment of the lower court is reversed, and the cause is remanded with directions to enter judgment in plaintiffs' favor according to the prayer of the complaint.