HEINO v. ANDERSON.

1. DEEDS—DELIVERY—EVIDENCE—CONDITIONS.

Finding of trial court that plaintiff, grantor in a quitclaim deed, had delivered the deed unconditionally and not conditioned upon the execution of deed to same grantees by person claiming to hold an interest under a previous unrecorded deed from such plaintiff *held*, not erroneous under record presented in suit to quiet title.

2. SAME—DELIVERY—CONSIDERATION.

The grantor's unconditional delivery of a quitclaim deed by her for a valuable consideration is sufficient to pass the title the grantor had to the grantee.

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur, Deeds § 123; 44 Am Jur, Quieting Title § 83.
[2] 16 Am Jur, Deeds §§ 57, 110, 123.
[3] 16 Am Jur, Deeds §§ 331, 332, 333.
[4] 13 Am Jur, Corporations §§ 924, 939, 943.
[5] 16 Am Jur, Deeds §§ 60, 446.

3. SAME—DELIVERY—RECORDING—COMPROMISE AND SETTLEMENT.

Grantor's unconditional delivery of quitclaim deed to defendant grantees for a valuable consideration cut off any interest which may have been held by the grantee under a previous, then unrecorded, deed from the same grantor to a grantee who had an agreement with the grantor whereby she was to retain full ownership and title in the property and to make a compromise in expected litigation relative to the title.

4. MINES AND MINERALS—PRINCIPAL AND AGENT—AUTHORITY.

Finding of trial court that agreement whereby oil companies agreed to give plaintiff, grantor under a quitclaim deed, a certain interest in proceeds of oil and gas produced, was a valid agreement *held,* supported by record even if not signed by higher officials, an agreement to obtain which was claimed by plaintiffs, where officials who had signed the agreement before plaintiff grantor did so, were authorized to do so and bound the oil companies thereby.

5. CONTRACTS—DEEDS—INTEREST IN OIL AND GAS PRODUCED.

The exchange of a quitclaim deed and the dismissal of suit to quiet title with prejudice for agreement to give plaintiff grantor a certain interest in oil and gas produced from the property gave the transaction legal force and binding effect.

Appeal from Newaygo; Pugsley (Earl C.), J. Submitted October 5, 1951. (Docket No. 47, Calendar No. 45,083.) Decided December 3, 1951.

Bill by Hattie Heino and another against Merle Anderson and others to quiet title in plaintiffs to an undivided ¾ interest in land. Bill dismissed. Plaintiffs appeal. Affirmed.

*Clem H. Block* (*Searl, White & Block,* of counsel), for plaintiffs.

*Warner Norcross & Judd* (*Harold S. Sawyer,* of counsel), for defendants.

DETHMERS, J. Plaintiff Heino claimed that title to an undivided ¾ interest in the 80 acres of land in question had vested in her and the remaining ¼ in

her sister, defendant Irene Anderson. The latter claimed, however, that she subsequently had acquired the entire fee by virtue of a conveyance to her from her attorney, who had purchased it on tax sale after default in payment of taxes by the 2 sisters. The other defendants claimed under her.

On September 16, 1943, Heino executed and placed in escrow a quitclaim deed to her claimed ¾ interest in favor of plaintiff Hill; and at the same time an agreement was entered into between them which provided for such execution and placing in escrow of said deed, that Hill would pay the expenses of litigation to establish Heino's title to a ¾ interest against her sister's claim of full ownership, that such litigation should be prosecuted in Heino's name, that title should remain in Heino until such litigation was concluded or until a compromise or settlement thereof might be accomplished, that she should remain owner of the premises until all the terms of the agreement had been fulfilled, and that if title should be determined by such litigation to be in Heino, or she acquired any interest in the property by reason of a compromise of such litigation or settlement thereof between her and the defendants therein, then plaintiff Hill, upon becoming entitled to delivery of the deed from the escrow agent, would, at the same time and as a condition precedent thereto, convey to Heino a certain interest in the proceeds from any oil or gas produced from the premises. On October 15, 1943, Heino commenced such litigation. It appears that discussions followed between an attorney representing both Hill and Heino and the defendants' attorneys, looking to a settlement of the litigation.

Thereafter, on November 23, 1943, Heino and Hill and the attorney who represented them both discussed a settlement, after which Heino and the attorney left Hill in the attorney's office and, with

Hill's full knowledge, went to the office of defendants' attorneys for the purpose of considering a settlement. While there Heino signed several copies of an agreement with the 2 defendant oil companies, some of which copies had previously been signed by authorized agents of those companies. This agreement provided for the execution and delivery by Heino to her sister, Irene Anderson, of a quitclaim deed to the premises and for development of the lands for oil by the 2 companies and the payment by them to Heino of certain proceeds from the oil and for discontinuance of said litigation. Heino also executed the agreed quitclaim deed in favor of her sister and plaintiffs' attorney signed a stipulation and order for dismissal of the suit. After these instruments had thus been executed by Heino and her attorney they were handed over to 1 of defendants' attorneys, and copies of the agreement signed by authorized agents of the oil companies were given to Heino. Then, at the suggestion of Heino's attorney, defendants' attorneys agreed to obtain the signatures of higher officials of the oil companies on copies of the agreement still retained by them and to forward them to plaintiffs' attorney and, according to defense testimony, this was complied with shortly thereafter. At that same time and place Heino told defendants' attorneys about the deed to Hill which she had executed and delivered to her attorney as escrow agent. She testified that she so informed them prior to the execution of the deed, agreement and stipulation in the office of defendants' attorneys. Testimony for the defendants, on the contrary, was that she first made mention thereof after said instruments had been duly executed and delivered to defendants' attorneys. Heino testified that such delivery to defendants' attorneys was expressly conditioned by her upon their obtaining a quitclaim deed from Hill and upon their furnishing her with

copies of said agreement signed by higher oil company officials. Testimony for defendants denied that any such conditions were expressed or intended. The defense admitted, however, that defendants' attorneys had agreed to obtain signatures of higher oil company officials on the agreement and that they drafted a deed for signature by Hill and handed it to plaintiffs' attorney for the purpose of obtaining Hill's signature thereon in the interests of avoiding any possible trouble with Hill and that said deed was never signed by him.

After the deed from Heino to her sister had been recorded, Hill recorded his deed from Heino and the latter attempted to repudiate her deed to her sister and her agreement with the oil companies. Then plaintiffs brought this suit to set the same aside and to quiet title to an undivided ¾ interest in the premises in themselves and for other relief. From decree for defendants, plaintiffs appeal.

Plaintiffs contend that delivery of the deed by Heino to defendants' attorneys did not pass title because it was conditioned upon their obtaining a similar deed from Hill and obtaining the signatures of higher oil company officials on the agreement and because they were aware, at the time, of Hill's interest, which he never thereafter conveyed to defendants. In this connection plaintiffs rely on *Wisconsin & Michigan R. Co.* v. *McKenna*, 139 Mich 43. In considering the applicability of the law in that case to the facts at bar, we note that the trial court appears to have believed defendants' version of the disputed facts and to have rejected that of plaintiffs. An examination of the entire record fails to persuade us of error in that regard on the part of the trial court. Viewed in the light of testimony for the defense, the instant case bears no similarity to the *McKenna Case* in respects controlling of the result. In the *McKenna Case* 2 of the 3 owners of

premises executed a conveyance and placed it in the hands of their own attorney with the understanding between them and the prospective grantees that before delivery to the latter said attorney was to obtain the signature thereto of the third person then known by the grantees to be the owner of an interest in the premises. He declined to sign. Under such circumstances this Court held that delivery never occurred. In the instant case Heino, sole owner of the title sought to be conveyed, executed the deed and made an unconditional delivery thereof to the grantee's attorneys. That was sufficient to pass Heino's interest to her sister. Furthermore, in the *McKenna Case* the grantees knew prior to the execution of the deed by 2 of the owners that a third person owned an interest and the latter never executed any instrument or did anything to divest himself therefrom. In the instant case, on the contrary, Hill had no title and there was nothing of record to disclose his interest, nor did the defendants or their attorneys know of it until after delivery of the deed to them by Heino when they were shown a copy of the agreement between Hill and Heino under which Hill's claimed interest came into being and by which Heino still retained full ownership and title and was authorized by Hill to make the compromise settlement in question. Under such circumstances. the Heino deed to defendants was effective to cut off any possible interest in Hill. The *McKenna Case* was a suit for specific performance of an oral agreement to give a deed which it was found by the court had never been delivered and for which no consideration had been given, so that the statute of frauds intervened.* In the instant case suit is brought to cancel a deed properly found by the trial court to have been delivered unconditionally in exchange for a valuable consideration. The *McKenna Case* is

* See CL 1948, § 566.106 (Stat Ann § 26.906).—REPORTER.

without application here.   The question of whether delivery of the Heino deed to defendants' attorneys was conditioned upon their obtaining for her the signatures of higher oil company officials on the mentioned agreement was one of fact which the trial court resolved, properly we think, in favor of defendants.   While it appears that plaintiffs' attorney desired the signatures of higher officials, it equally appears, in the absence of any claims or attempt by plaintiffs to sustain the burden of proving to the contrary, that the agents who had signed the agreements prior to November 23d and those who delivered them were authorized to do so, thus binding the oil companies thereby.   In consequence, the agreements constituted a valid consideration for the Heino deed.   Upon exchange of the instruments nothing was left to be done necessary to give the transaction legal force or binding effect, nor did any offer of Heino remain unaccepted and subject to withdrawal by her at will.

Decree affirmed.   Costs to defendants.

Reid, C. J., and Boyles, North, Carr, Bushnell, and Sharpe, JJ., concurred.   Butzel, J., did not sit.